# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ED TEAL, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:10-CV-840-VEH |
| | ) |
| DOUG GIBBS, | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

Plaintiff Ed Teal ("Teal") initiated this action on April 5, 2010, against Defendant Doug Gibbs ("Gibbs"). (Doc. 1).

Teal's Complaint contains four counts. Three counts are asserted under the Lanham Act: Count One is a cybersquatting claim asserted pursuant to 15 U.S.C. § 1125(d); Count Two is a claim of false designation of origin asserted pursuant to 15 U.S.C. § 1125(a); Count Three alleges infringement of a federally registered trademark under 15 U.S.C. § 1114. Court Four alleges violations of the Alabama Trademark Act.

Pending before the Court is Teal's Motion for Partial Summary Judgment on his cybersquatting claim. (Doc. 16). Also pending before the Court is Gibbs's

Motion for Summary Judgment. (Dc. 24). For the reasons explained below, Teal's Motion for Partial Summary Judgment is due to be denied and Gibbs's Motion for Summary Judgment is due to be granted.

## II.   STANDARD ON MOTION FOR SUMMARY JUDGMENT

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for

---

[1] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to FED. R. CIV. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258. "If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249 (internal citations omitted).

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Id.* at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a

genuine issue for trial. *Id.*

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial *Id.* at 1116. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial. *Id.*

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. *Id.* This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand

a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assurance Soc'y*, 224 F.2d 338, 345 (5th Cir. 1955)[2]; *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding all Fifth Circuit decisions prior to the close of business on September 30, 1981.

## III.   STATEMENT OF FACTS[3]

Teal is a Marshall County, Alabama resident who ran for the office of Marshall County Sheriff in 2010.  AF 1.[4]  Teal announced his candidacy on January 5 or 6, 2010, at a Republican Party meeting in front of between forty and eighty people. (Doc. 22-1 at 23-25).  His opponent was J. Scott Walls, the incumbent Marshall County Sheriff.  AF 1.  Teal had served for over thirty years in Marshall County law enforcement and had ran an unsuccessful campaign against Walls in 2006.  (Doc. 25-1 at 8-9, 21-22).  Teal also ran a campaign for sheriff in 1995.  (Doc. 25-2 at 5).  Teal discussed his decision to run with two advisors prior to making his announcement. (Doc. 25-1 at 22-23).  A press release ran in all Marshall County newspapers at some

---

[3]  These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.") (quotation omitted).

[4]  The designation "AF" stands for admitted fact and indicates a fact offered by Teal that Gibbs has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case.  The Court's numbering of admitted facts (e.g., AF No. 1) corresponds to the numbering of Teal's Statement of Facts as set forth in Doc. 16 and responded to by Gibbs in Doc. 21.  Similarly, the designation "AAF" stands for additional admitted fact and indicates a fact offered by Gibbs that Teal has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case.  The Court's numbering of additional admitted facts corresponds to Gibbs's Statement of Facts as set forth in Doc. 24 and responded to by Teal in Doc. 27.

point after the announcement. (Doc. 25-1 at 25-26).

This lawsuit was originally filed on April 5, 2010, as a "John Doe" complaint after Teal sought to register several domain names to promote his candidacy for sheriff. AF 2. Teal learned that these and a number of other domain names incorporating his name had been reserved and registered beginning on January 6, 2010, by an unknown individual with domain name registrar Domain Names by Proxy, Inc.[5] AF 3. To learn the identity of the person or entity responsible for purchasing these domain names, Teal subpoenaed the records of Domains by Proxy, Inc. AF 5. Upon receiving the subpoena response, Teal discovered that Gibbs was the registrant of each of these domain names. AF 5. Teal also learned that Gibbs had registered the domain name "SHERIFFEDTEAL.COM" with registrant GoDaddy.com. AF 6. On April 23, 2010, Teal amended his Complaint, naming Gibbs as Defendant. AF 8.

At the time that he registered the domain names at issue, Gibbs was the Chief

---

[5] The following domain names were registered by an unknown individual with Domain Names by Proxy, Inc.: EDTEAL.COM; EDTEAL.NET; EDTEAL.ORG; EDTEALFORSHERIFF.COM; EDTEALFORSHERIFF.NET; EDTEALFORSHERIFF.ORG; ELECTEDTEAL.COM; ELECTEDTEAL.NET; ELECTEDTEAL.ORG; TEALFORSHERIFF.COM; TEALFORSHERIFF.NET; TEALFORSHERIFF.ORG; VOTEEDTEAL.COM; VOTEEDTEAL.NET; VOTEEDTEAL.ORG; EDTEAL2010.COM; EDTEAL2010.NET; and EDTEAL2010.ORG. AF 3.

Deputy of the Marshall County Sheriff's Department. AF 5. In this position, he reports directly to and serves at the pleasure of incumbent Sheriff Walls. AF 10. He has maintained his job as chief deputy under Walls for four years. AF 10. Gibbs assisted with Walls's campaign against Teal by putting up signs, passing out literature, and attending and assisting with his speeches at public events. AF 12.

On the morning of January 6, 2010, Gibbs provided his credit card to Marshall County Sheriff Department Public Relations Officer Heath Thomas with the understanding that it was to be used to purchase websites associated with Teal's name. AF 13. The majority of the domain names were registered on Wednesday, January 6, 2010, beginning at 8:27 a.m., and the rest were registered on Thursday, January 7, 2010, at 12:28 p.m. AF 7. Gibbs never established a website using any of these domain names. AAF 11.

Teal filed the instant Complaint on April 5, 2010. (Doc. 1). Transfer of the domain names from Gibbs to Teal was effected in July 2010. AAF 14, 15. Teal established a website to promote his candidacy at that time. AAF 15.

The election was held on November 2, 2010. AAF 20.

## IV. ANALYSIS

### A. Cybersquatting

The Anticybersquatting Consumer Protection Act ("ACPA"), codified at 15

U.S.C. § 1125(d), creates a federal cause of action for cybersquatting, and states in relevant part:

> (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person –
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that –
>
> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . .

Thus, to prevail under the ACPA, a plaintiff must prove that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit."[6] *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. Appx. 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). Gibbs argues that he is entitled to summary judgment on Teal's cybersquatting claim because Teal has failed to prove that his personal name was distinctive at the time the domain names incorporating his name were registered. (Doc. 24 at 6). Gibbs also argues that Teal cannot show that

---

[6] Teal makes no argument that his mark is famous.

9

Gibbs's actions were in bad faith. (Doc. 24 at 6).

The 11th Circuit recognizes four categories of distinctiveness, listed in ascending order of strength:

> (1) generic – marks that suggest the basic nature of the product or service; (2) descriptive – marks that identify the characteristic or quality of a product or service; (3) suggestive – marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful – marks that bear no relationship to the product or service, and the strongest category of trademarks.

*Tana v. Dantanna's*, 611 F.3d 767, 774 (11th Cir. 2010) (quoting *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797-98 (11th Cir. 2003)). "Names – both surnames and first names – are regarded as descriptive terms and therefore one who claims federal trademark rights in a name must prove that the name has acquired a secondary meaning." *Id.* (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)). Because Teal's personal name is not inherently distinctive, he must show that it has acquired secondary meaning, defined as "the connection in the consumer's mind between the mark and the product's producer." *Gift of Learning Found., Inc.*, 329 F.3d at 800. Because the mark must have acquired secondary meaning at the time of registration of the domain name in order to state a claim under the ACPA, Teal must show that the public had connected his personal name and the campaign for sheriff as of January 6, 2010, the date the first of the domain names was

registered. 15 U.S.C. § 1125(d)(A)(ii)(I).

The plaintiff "has the burden of sustaining a high degree of proof in establishing secondary meaning for a descriptive term." *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1525 (11th Cir. 1991). There are four factors to consider in determining whether a name has acquired secondary meaning:

> (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture.

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). The existence of secondary meaning is a question of fact. *Investacorp*, 931 F.2d at 1524. Teal asserts that his use of his own name in sheriff elections satisfies this multi-factor test. In support of this assertion he points to the fact that he has served for over thirty years in Marshall County law enforcement, he had made it known that he was running for sheriff and his candidacy was covered by all the Marshall County newspapers, and that the public made a sufficient connection with his name to vote for Teal in the subsequent election. (Doc. 27 at 7).

Teal served for over thirty years in Marshall County law enforcement and ran previous campaigns for sheriff in 2006 and 1995. Thus, his use of his name in

connection with the position of sheriff began fifteen years prior to Gibbs's use of the mark. However, there is nothing in the record about the manner of Teal's use of the mark during these campaigns, other than the fact that Teal ran for sheriff.

There is little evidence of the nature and extent of Teal's advertising and promotion of his name in connection with the 2010 campaign for sheriff. The only evidence presented of these activities prior to the registration of the domain names is Teal's one-time announcement of his candidacy to a crowd of between forty and eighty people and his discussion of the decision to run with two advisors. These actions lend little support to Teal's claim in light of the fact that the announcement occurred only one day prior to the registration of the domain names and because the group represented only a minuscule percent of the eventual voters in the election. *See* (Doc. 25-4) (stating that 26,000 people voted in the November 1, 2010, Marshall County election). The fact that Teal's candidacy for sheriff was covered by all the Marshall County Newspapers does not support his ACPA claim because there is no evidence as to the particular date his campaign was covered by the press.

Evidence that the public identified Teal's name with the election for sheriff prior to the registration of the domain names is lacking. The percentage of the vote Teal received for sheriff on November 2, 2010, provides no evidence that Teal's name had acquired secondary meaning as of January 6, 2010.

The fact that Teal had run campaigns for sheriff fifteen years and four years prior to 2010, and that he had announced his intention to run to two advisors and to a group of between forty and eighty people the day before the domain names were registered, falls short of the high burden required to establish that Teal's name had acquired secondary meaning before the end of the relevant time period. *See Investacorp*, 931 F.2d at 1525-26 (finding mark had not acquired secondary meaning where, although mark was used five years prior to defendant's use of the mark, there was nothing significant about the manner of use of the mark, advertising expenditures did not exceed one-hundred dollars per month, and few instances of consumer confusion were presented). Therefore, the Court finds that Gibbs is entitled to summary judgment on Teal's claim under the ACPA.

**B.   False Designation of Origin**

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), creates a federal cause of action for false designation of origin, establishing civil liability for:

> (1) Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a). Under the Lanham Act, the term "use in commerce" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. Gibbs argues that Teal's false designation of origin claim fails because the domain names were never used in commerce. (Doc. 24 at 16). Teal admits that the domain names were never placed into the stream of commerce, but argues that the effect was the same because Gibbs's registration of the domain names affected Teal's public image and impaired Teal's ability to raise funds for his political campaign. (Doc. 27 at 12-13). Teal cites no case law in support of this contention.

Teal's admission that the domain names were never used in commerce precludes his recovery on this claim. *See Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 934 (11th Cir. 2010) ("A successful cause of action for trademark infringement requires the evidence to establish that the infringer 1) used the mark in commerce, without consent; and 2) that the use was likely to cause confusion."). Therefore, the Court finds that Gibbs is entitled to summary judgment on Teal's claim for false designation of origin.

**C.     Federal Trademark Infringement**

Section 32(a) of the Lanham Act, codified at 15 U.S.C. § 1114(1), creates a cause of action for the infringement of a registered mark. *See Tana v. Dantanna's*,

611 F.3d 767, 773 n.5 (11th Cir. 2010). Teal admits that his personal name is not a registered trademark under the Lanham Act. (Doc. 27 at 13). A cause of action for the infringement of an unregistered trademark is properly asserted under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a); *see Tana*, 611 F.3d at 773 n.5. Because Teal's personal name is not a registered trademark, the Court finds that Gibbs is entitled to summary judgment on Teal's claim for federal trademark infringement under Section 32(a) of the Lanham Act.

**D.    State Trademark Infringement**

Teal claims that Gibbs's use of his name violates his rights under the Alabama Trademark Act, Ala. Code § 8-12-1 *et seq*. (Doc. 1 at 5). Gibbs asserts that he cannot be liable under the Alabama Trademark Act because Teal's name is not registered as a mark in the State of Alabama. (Doc. 24 at 18). Teal argues that a party may be liable under the Alabama Trademark Act for infringement even without a formal registration pursuant to Section 8-12-19 of the Alabama Code. (Doc. 27 at 13).

The Alabama Trademark Act creates a cause of action for the infringement of a registered mark. Ala. Code § 8-12-18. Section 8-12-19 of the Alabama Code addresses unregistered or common law marks, stating, "Nothing in this article shall adversely affect the rights or the enforcement of rights in marks acquired in good

faith at any time in common law." While this provision recognizes that a common law or unregistered trademark owner may have rights that supercede those of the owner of a registered mark, it does not extend the coverage of the Alabama Trademark Act to unregistered marks. *See* Ala. Code § 8-12-19 cmt. ("This section expressly provides that a legitimate trademark owner, whose rights are established at common law, may be paramount to the rights of another person for the same or a confusingly similar mark, whether the latter is registered or unregistered."). Because Teal's name is not registered as a mark in the State of Alabama, the Court finds that Gibbs is entitled to summary judgment on Teal's claim for infringement under the Alabama Trademark Act.

## V.     CONCLUSION

Accordingly, for the reasons stated above, Teal's Motion for Partial Summary Judgment is due to be **DENIED** and Gibbs's Motion for Summary Judgment is due to be **GRANTED**. A separate order will be entered.

**DONE** and **ORDERED** this the 28th day of June, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge